**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

Michael Echevarria and Bebi Haniff

                      Debtors.

---

Michael Echevarria and Bebi Haniff,

                Debtors and Plaintiffs
                on Behalf of Themselves
                And All Others
                Similarly Situated,

     v.

Bank of America Corporation; Bank of
America, National Association; and FIA Card
Services, N.A.,

                Defendants.

---

Index No.: 17-cv-8026

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................3

I.  The Terms of the Proposed Settlement. .............................................................6

II.  Notice to the Class...............................................................................................8

ARGUMENT ...............................................................................................................9

I.  The Court Should Grant Final Approval of the Proposed Settlement. .............9

   A.  Legal Standard. .............................................................................................9

   B.  The Settlement Meets the Standard for Final Approval. ..........................11

      1.  The Settlement is Procedurally Fair....................................................11

      2.  The Settlement is Substantively Fair, as Application of the
          Grinnell Factors Shows......................................................................13

         i.  The Complexity, Expense, and Likely Duration of Litigation. ............13

         ii.  The Reaction of the Class to Settlement. ...............................................14

         iii. The Stage of the Proceedings and the Amount of Discovery Completed..............14

         iv.  The Risks of Establishing Liability and Damages.................................15

         v.  The Risk of Maintaining Class Action Status Through Trial. ...............15

         vi.  The Ability of the Defendant to Withstand a Greater Judgment. .........16

         vii. The Range of Reasonableness of the Settlement Fund. ........................17

   C.  The Notice Satisfies Due Process and Rule 23.........................................18

   D.  The Court Should Certify the Class for Settlement. .................................20

CONCLUSION...........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

Cases

*Banyai v. Mazur*,
　No. 00 CIV 9806 SHS, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ...................................... 15

*Bodon v. Domino's Pizza, LLC*,
　No. 09-CV-2941, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ................................................ 16

*Charron v. Wiener*,
　731 F.3d 241 (2d Cir. 2013) ................................................................................................... 9

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)............................................................................................ passim

*Clark v. Ecolab, Inc.*,
　Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
　2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ......................................................................... 11

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)............................................................................................. 11, 12

*Echevarria v. Bank of America Corp.*,
　Adv., Proc. No. 14-08216 (RDD) .................................................................................... passim

*Hadel v. Gaucho, LLC*,
　No. 15 CIV. 3706, 2016 WL 1060324 (S.D.N.Y Mar. 14, 2016) ........................................... 10

*Handschu v. Special Servs. Div.*,
　787 F.2d 828 (2d Cir. 1986)................................................................................................... 18

*In Re Haynes*,
　No. 14-cv-4171 (VB), 2015 WL 862061 (S.D.N.Y. Mar. 3, 2015)........................................... 4

*In re Global Crossing Sec. & ERISA Litig.*,
　225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 16

*In re Med. X-Ray Film Antitrust Litig.*,
　No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................................. 16

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
　187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................... 11

*In re Sinus Busters Products Consumer Litig.*,
    No. 12-CV-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........................................... 16

*Manley v. Midan Rest. Inc.*,
    No. 14 Civ. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ................................ 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998) ..................................................................................................... 10

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ................................................................................. 9, 10, 11, 13

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................................................................... 13

*Snapp v. The Topps Co., Inc.*,
    No. 93-CV-0347, 1997 WL 1068687 (E.D.N.Y. Feb. 12, 1997) ............................................ 14

*Tiro v. Pub. House Investments, LLC*,
    No. 11 CIV 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) .................................... 12

*Viafara v. MCIZ Corp.*,
    No. 12 Civ. 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................................ 10, 14, 17

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y Feb. 18, 2011) ................................................. 15

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 CIV 1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ............................ 14, 15

Statutes

Section 524 of the Bankruptcy Code ............................................................................................ 1, 3

Rules

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 18

Fed. R. Civ. P. 23(b)(3) .................................................................................................................. 18

Fed. R. Civ. P. 23(c)(3) ............................................................................................................ 18, 19

Fed. R. Civ. P. 23(e) ............................................................................................................... 3, 9, 17

Plaintiffs Michael Echevarria and Bebi Haniff ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' unopposed motion for final approval of the parties' settlement of this class action suit ("Motion for Final Approval").

## PRELIMINARY STATEMENT

In this class action, Plaintiffs have alleged that Bank of America Corp., Bank of America, N.A., and FIA Card Services, N.A. (collectively, "Bank of America" or "Defendants") violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to correct the credit reporting on certain consumer debts to reflect that those debts were discharged in bankruptcy.

Plaintiffs, on behalf of themselves and all other similarly situated, have entered into a Settlement Agreement with Defendants.[1] If approved, the Settlement would resolve the claims against Defendants in this action. The Settlement Agreement was negotiated at arm's length by experienced and knowledgeable counsel, following significant discovery, and it is a fair, reasonable and adequate settlement. For these reasons, final approval is warranted.[2]

Pursuant to the Settlement Agreement, Defendants have agreed to fund a $5.5 million Settlement Fund and pay Class Counsel up to $1 million in Fees and Expenses. Class Counsel may also seek approval for up to an additional $500,000 in Fees and Expenses, to be paid from the Settlement Fund. Based on their records, Bank of America determined that there are more than

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement, filed herewith as Exhibit A to the Declaration of Adam R. Shaw in Support of Motion for Final Approval of Settlement ("Shaw Declaration").

[2] The Parties have agreed upon a Proposed Final Judgment and Order of Dismissal with Prejudice, which is Exhibit 4 to the Settlement Agreement filed herewith.

1

435,000 Class Members.  Those Class Members who submitted payments to Bank of America post-discharge will receive automatic payments from the Settlement Administrator to reimburse them for those payments based on Bank of America's records of such payments.  Class Members who do not receive an automatic payment but submit proof of payment will also be reimbursed. The remaining settlement monies will be distributed to the Class on a claims-made basis.

It is estimated that automatic reimbursement payments will go to the borrowers of 620 accounts for post-discharge payments made to Bank of America, with an average payment of approximately $695 per account.  Based on the number of these automatic reimbursement claims and the distribution claims submitted to date, it is estimated that the distribution claim payments will range from approximately $150-$300 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Notably, no settlement monies will revert to Bank of America and costs of Notice are paid by Bank of America, not from the Settlement Fund.

As a part of the Agreement, Bank of America also represents and warrants that it has requested that the Credit Reporting Agencies delete Class Members' Bank of America tradelines and further represents and warrants that it will not ask the Credit Reporting Agencies to reinstate the Class Members' Bank of America tradelines, but will request reinstatement if a Class Member so desires.  In addition, Bank of America represents and warrants that if it sells similar debt within four (4) years of the Settlement, it will request that the Credit Reporting Agencies delete the Bank of America tradelines for such accounts, as well.

As such, the Settlement is an outstanding result for the Class—it offers substantial relief to the Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.  For all of these reasons, and as further described below,

Plaintiffs respectfully request that this Court grant final approval of the Settlement.  *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiffs allege that Bank of America attempts to collect discharged consumer debts by refusing, as a policy, to correct credit reporting to reflect that the debts were discharged in bankruptcy.  Plaintiffs allege that maintaining the negative credit reporting despite bankruptcy discharges pressures consumers to repay discharged debt in order to have the negative credit reporting removed from their credit reports.   Am. Compl. ¶¶ 81-90. Plaintiffs allege that Bank of America's systematic refusal to correct this credit reporting violates the discharge injunction set forth in § 524 of the Bankruptcy Code.  The Settlement Agreement that Plaintiffs now submit for final approval provides substantial relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On April 30, 2013, Plaintiff Michael Echevarria filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *In re Echevarria*, No. 13-22693.  The Bankruptcy Court entered a discharge order on August 6, 2013.  On or about February 7, 2014, Mr. Echevarria moved to reopen his bankruptcy for the purpose of challenging Bank of America's conduct, and the Bankruptcy Court granted his motion on March 18, 2014.

Likewise, on November 20, 2013, Plaintiff Bebi Haniff filed for bankruptcy in the same bankruptcy court.  *In re Haniff*, No. 13-23898.  The Bankruptcy Court entered a discharge order on May 7, 2014.  On October 20, 2014, Ms. Haniff moved to reopen her bankruptcy, and the Bankruptcy Court granted that motion on November 12, 2014.

On March 31, 2014, Plaintiff Michael Echevarria, individually and on behalf of all others similarly situated, filed a complaint against Bank of America (the "Complaint").  *Echevarria v.*

3

*Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 1.  The parties subsequently engaged in extensive motion practice.

On May 30, 2014, Bank of America filed a motion to withdraw the reference of the action to the bankruptcy court.  After full briefing and oral argument, on March 2, 2015, this Court denied that motion.  *In re Haynes*, No. 14-cv-4171 (VB), 2015 WL 862061 (S.D.N.Y. Mar. 3, 2015).

On June 2, 2014, Bank of America moved to dismiss the Complaint.  Dkt Nos. 12-13. Following full briefing and oral argument, the Bankruptcy Court granted the motion, but also granted Plaintiff leave to move to replead.  *Echevarria v. Bank of America Corp., Adv. Proc. No. 14-08216 (RDD)*,  Dkt. Nos. 36-37.  On November 18, 2014, with the Bankruptcy Court's permission, Plaintiffs filed an amended complaint (the "Amended Complaint") *Id*. at Dkt. No. 59. Among other things, the Amended Complaint included Plaintiff Bebi Haniff as a second proposed representative of the putative class.  Bank of America moved to dismiss the Amended Complaint and strike the class allegations in the Amended Complaint and subsequently moved to dismiss for lack of subject matter jurisdiction.  *Id*. at Dkt. Nos. 62-63, and 71.  The Bankruptcy Court denied both of these motions and, on April 29, 2015, Bank of America answered the Amended Complaint. *Id*. at Dkt. Nos. 86-87.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories and requests for admission.  *See* Shaw Decl. at ¶ 4.  In response to requests for production served by Class Counsel, Bank of America produced over 100,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation.  *Id*.  Class Counsel also deposed a corporate representative of Bank of America pursuant to Fed. R. Civ. P. 30(b)(6).  *Id*.  In addition, Class Counsel have issued third party subpoenas in the course of the litigation.  *Id*.

4

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation.  The parties had numerous settlement discussions and twice mediated the dispute with an experienced and well-respected mediator from JAMS, Peter Woodin. *Id*. at ¶¶ 6-7.  In addition, they participated in two separate settlement conferences with Judge Drain in the Bankruptcy Court.  *Id*. at ¶ 8.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the terms of the Settlement.  The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature.  Plaintiffs had two objectives in filing this action – to remedy the alleged violation of the discharge injunction by having Bank of America correct its credit reporting to reflect that the putative Class Members' debts were discharged in bankruptcy and to compensate putative Class Members who were harmed by Bank of America's actions.  As described further below, the Settlement Agreement achieves both objectives and further safeguards the credit reports of future consumers.  Bank of America has addressed the credit reporting of Class Members' debt and, under the terms of the Settlement, is obligated to address tradelines for future consumers.  Moreover, the Settlement provides reimbursement to Class Members who made post-discharge payments on their Bank of America debts, and further allows Class Members to make claims from a $5.5 million Settlement Fund.  Notice costs and the majority of the Fees and Expenses are not paid from the Settlement Fund and there is no reversion to Bank of America.

On August 25, 2017, Plaintiffs moved for preliminary approval of the Settlement in the Bankruptcy Court.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 113.  Following a hearing, on October 11, 2017, the Bankruptcy Court issued an order

preliminarily approving the settlement and directing that notice be issued.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 117.  In its preliminary approval order, the Bankruptcy Court also conditionally certified the Class, for settlement purposes only, and appointed Michael Echevarria and Bebi Haniff as Class Representatives and the law firms Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *See id*.

On October 16, 2017, the parties jointly moved to withdraw the reference so that this Court could consider final approval of the settlement.  *Id*. at Dkt. No. 118.  On October 30, 2017, this Court granted the motion. Dkt. No. 4.

**I.     The Terms of the Proposed Settlement.**

Under the Settlement Agreement, the Class is defined as "the collective group of those individual borrowers who (i) maintained a Credit Card Account with BANA that was charged off by BANA and sold to a third party Debt Buyer on or after January 1, 2008, and (ii) were discharged in Chapter 7 bankruptcy after such debt was sold to a third party Debt Buyer but before October 1, 2015."  Agreement, § 1.13.

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that Bank of America will fund a qualified settlement fund of $5.5 million.  From this Settlement Fund, the Settlement Administrator shall automatically remit payment to Class Members whose Bank of America debts were discharged in bankruptcy and who subsequently made payments to Bank of America on those debts, in order to reimburse them for those payments (called "Post-Discharge Payors").  Agreement, § 5.1.  These Post-Discharge Payors will not need to submit a Claim Form in order to receive payment.  *Id*.  However, persons who do not receive reimbursement but believe that they are entitled to reimbursement may submit a claim.  The remaining funds in the Settlement Fund shall be disbursed

6

primarily to Participating Claimants who submit a Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.  The Class Representatives may also apply to receive, subject to court approval, Incentive Awards of $5,000 each from the Settlement Fund.  *Id*. at § 5.7.

In addition, as a direct result of the Action, Bank of America has addressed the credit reporting of Class Members by requesting that the Credit Reporting Agencies delete the Class Members' Bank of America tradelines.  *Id*. at § 3.2.1.  Bank of America further represents and warrants as a part of the Settlement that it will not ask the Credit Reporting Agencies to reinstate Class Members' tradelines.  *Id*. at §§ 3.2.2-3.2.3.  Bank of America also represents and warrants as a part of the Settlement that "since the filing of the Action, [Bank of America] has not sold Defaulted Credit Card Accounts to third-party Debt Buyers."  *Id*. at § 3.2.5.  It further represents and warrants that if it *does* sell such debt within four (4) years of the Settlement, it will request that the Credit Reporting Agencies delete the Bank of America tradelines for such accounts.  *Id*. at § 3.2.6  ("If [Bank of America] sells Defaulted Credit Card Accounts to a third-party Debt Buyer after the Effective Date and on or before September 1, 2021, [Bank of America] will:  (1) request that the Credit Reporting Agencies delete the tradelines for the Defaulted Credit Card Accounts sold to a third-party Debt Buyer or (2) at the time of sale or thereafter, with respect to debts for which [Bank of America] receives a bankruptcy discharge notice from the Court, request that the Credit Reporting Agencies delete the tradeline for such sold accounts.").[3]  Thus, the Settlement addresses the core complaint of Plaintiffs and the Class and provides substantial relief to them and to future consumers.

---

[3] This provision in the Settlement Agreement also addresses Bank of America's obligations under the Agreement if federal or state law should change to require it to report on such debt.  *Id*.

Under the Agreement, Bank of America shall separately pay Attorneys' Fees and Expenses and the settlement administration costs directly to Class Counsel and the Settlement Administrator respectively; these payments shall not be made from the Settlement Fund (except as described in the following). *See id*. at § 15.  Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed $1 million.  *Id*.  Bank of America shall pay these Fee and Expenses directly to Class Counsel.  *Id*.  However, Class Counsel may also seek approval for up to an additional $500,000 in Fees and Expenses, to be paid from the Settlement Fund.  *Id*.

## II.   Notice to the Class.

As provided in the Settlement Agreement, Bank of America selected a Settlement Administrator, with the consent of Class Counsel, who distributed Notice to the Class.  Agreement, § 1.54; Declaration of Charles Marr, Esq. ("Marr Decl.") at ¶ 3-4.  Bank of America confidentially provided a list of all Class Members to the Settlement Administrator, who then provided Notice directly to all Class Members by first class mail.  *Id*. at § 7.2; Marr Decl. at ¶ 4.  Thus, in this Action, one hundred percent of Class Members, or very close to that, received Notice of the Settlement directly.  As also provided in the Settlement Agreement, the Notice was mailed to Class Members on a timely basis, *i.e.*, within forty-five days after the Bankruptcy Court's approval of the Notice.  *Id*. at § 1.40; Marr Decl. at ¶ 4.  The Notice provided detailed information concerning the Action, the terms of the Settlement, the Settlement approval process, and how to participate in the Settlement, opt out of it, or object to it.  *Id*. at Exh. 1.  In addition, the Settlement Administrator established a Settlement Website, which contains the Settlement Agreement, Notice and Claims Forms.  *Id*. at § 7.7; Marr Decl. at ¶ 20.  Class Members submitted Claim Forms both via mail and through the Settlement Website.  *Id*.

## ARGUMENT

**I.    The Court Should Grant Final Approval of the Proposed Settlement.**

Class Counsel have worked diligently to reach a fair, reasonable, and adequate settlement. Plaintiffs and Class Counsel believe the claims the Settlement resolves are meritorious.  They recognize, however, that there is significant risk and expense associated with continuing to prosecute these claims through trial and any potential appeals.  In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation.  Indeed, this action has already been pending for more than three years.  In light of the foregoing considerations, Class Counsel believe the proposed Settlement provides an excellent outcome and is thus in the best interests of Class Members.

**A.    Legal Standard.**

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  "A court may approve a class action settlement only after . . . finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In order to determine whether a settlement is "fair, reasonable, and adequate," a court must assess whether the settlement is both procedurally and substantively fair.  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

As the Second Circuit has recognized, there is a "strong judicial policy in favor of settlements, particularly in the class action context."  *McReynolds*, 588 F.3d at 803 (internal quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public

policy."); *Hadel v. Gaucho, LLC*, No. 15 CIV. 3706, 2016 WL 1060324, at *2 (S.D.N.Y Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.").

Consistent with the strong judicial policy in favor of settlement, in assessing whether a settlement is procedurally fair, courts apply a "presumption of fairness, reasonableness and adequacy as to the settlement where a class settlement is reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds*, 588 F.3d at 803 (internal quotation omitted). In assessing whether a settlement is substantively fair, courts in this Circuit use the nine factor-test set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess

the potential risks and rewards of litigation . . . ." *Id.* (internal quotation marks omitted).  The

Second Circuit will only disturb a judicially-approved class action settlement when there is a clear

showing that the district court abused its discretion.  *McReynolds*, 588 F.3d at 803.

       **B.**     **The Settlement Meets the Standard for Final Approval.**

     The proposed Settlement is both procedurally and substantively fair.  The Bankruptcy

Court has already "preliminarily approved . . . the Settlement . . . as fair, reasonable, and adequate"

and found on a preliminary basis that "the Settlement . . . falls within the range of reasonableness

and was the product of informed, good-faith, arms'-length negotiations between the Parties and

their counsel, and therefore meets the requirements for preliminary approval."  *Echevarria v. Bank*

*of America Corp.,* Adv. Proc. No. 14-08216 (RDD), Dkt. No. 117 at 3.  Likewise, the proposed

Settlement meets all of the requirements for final approval.

       **1.**     **The Settlement is Procedurally Fair.**

     In order to demonstrate a settlement's procedural fairness, a party must show that "the

settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the

experience and ability, and have engaged in the discovery, necessary to effective representation of

the class's interests." *D'Amato*, 236 F.3d at 85 (internal quotation omitted).  When counsel for the

parties engage in diligent arm's length negotiations, a settlement is generally entitled to a

presumption of fairness.  *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474

(S.D.N.Y. 1998) ("*NASDAQ II*").  The participation of a highly qualified mediator in settlement

negotiations strongly supports a finding that negotiations were conducted at arm's length and

without collusion.  *D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-

certification settlement negotiations helps to ensure that the proceedings were free of collusion and

undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL

11

2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Settlement is the product of vigorous, arm's length negotiations by informed and experienced counsel, following the necessary discovery. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses. Shaw Decl. at ¶ 4. Moreover, they have briefed a number of contested issues to the Bankruptcy Court, and conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on Bank of America. *Id*. In response to Plaintiffs' document requests, Bank of America produced over 100,000 pages of documents, which Class Counsel have analyzed. *Id*. Class Counsel have also deposed a corporate representative of Bank of America pursuant to Fed. R. Civ. P. 30(b)(6), and sought third party discovery. *Id*. By engaging in thorough discovery and the litigation of these claims in the Bankruptcy Court, Class Counsel has obtained the necessary understanding of the strengths and weaknesses of Plaintiffs' claims.

With respect to the negotiation of the Settlement, both Plaintiffs and the Settlement Class and Bank of America are represented by experienced and knowledgeable counsel. In particular, Class Counsel has experience in both complex class action litigation and bankruptcy law. The Settlement was reached after the parties engaged in extensive negotiations over a period of months. These negotiations included face-to-face sessions as well as numerous telephone and email discussions. Moreover, the parties' face-to-face negotiations took place during mediation sessions with an experienced and highly regarded JAMS mediator. *Id*. at ¶¶ 6-7. The parties also participated in multiple settlement conferences with Judge Drain in the Bankruptcy Court. *Id*. at ¶ 8. In all respects, the negotiations were thorough and hard fought, and free from any undue pressure or collusion.

As such, the Settlement is procedurally fair and is entitled to a "presumption of fairness, reasonableness and adequacy." *McReynolds*, 588 F.3d at 803.

### 2.   The Settlement is Substantively Fair, as Application of the *Grinnell* Factors Shows.

In order to demonstrate a settlement's substantive fairness for final approval, a party must demonstrate that the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are satisfied.  Here, these factors overwhelmingly favor final approval of the Settlement.

### i.   The Complexity, Expense, and Likely Duration of Litigation.

First, the complex, expensive and time-consuming nature of this litigation weighs heavily in favor of settlement.  *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement.") (internal quotation omitted).  The procedural history outlined above demonstrates that this litigation is, by its nature, complex.  Moreover, it has already gone on for more than three years, at significant expense to the parties.  If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming. This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial.  In addition, post-judgment appeals are also possible.  This litigation would  continue to be complex, costly and time-consuming and would require significant judicial oversight.

### ii.   The Reaction of the Class to Settlement.

The reaction of the Class to the Settlement has been overwhelmingly positive, as demonstrated by the exceedingly low number of objections received to date.  As of this date, out

of over 435,000 Class Members, only six have objected to the Settlement.  Marr Decl. at ¶ 14.  The exceedingly small number of objections from such a large settlement class indicates that the proposed settlement is fair.  *See Snapp v. The Topps Co., Inc.*, No. 93-CV-0347, 1997 WL 1068687, at *2 (E.D.N.Y. Feb. 12, 1997) ("The dearth of objections carries considerable weight in the determination of fairness."); *see also Wal-Mart*, 396 F.3d at 118-19.  Moreover, these objections may be procedurally improper, as it is unclear whether they were filed with the Court as required, and more importantly none of them raises a substantive objection to the Settlement other than a general claim of unfairness.  In addition, only fifty-nine Class Members have requested to opt out, and of those, 47 requests were timely and complete.  *Id*. at ¶ 15

### iii.     The Stage of the Proceedings and the Amount of Discovery Completed.

This factor also weighs heavily in favor of settlement, given that the action has been pending for more than three years and Class Counsel have taken a significant amount of discovery during that time period, as described above.  As a result of the discovery taken to date and as a result of discovery taken in related cases pending in the Southern District Bankruptcy Court, Class Counsel have gained sufficient insight into the facts and legal issues associated with the case to make the necessary judgments concerning settlement.  *See Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses or their claims and to accurately estimate damages at issue.").  In short, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly."  *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016).

### iv.     The Risks of Establishing Liability and Damages.

As with any litigation, this action inherently involves risks.  Thus, this factor weighs in favor of settlement, as well.  Bank of America continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiffs' claims, as it has done every step of the way to date.  As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides.  *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser*, 2014 WL 4816134, at *6.

          **v.**        **The Risk of Maintaining Class Action Status Through Trial.**

This factor also weighs in favor of settlement, as Bank of America has already mounted a challenge to the class allegations in this action and would no doubt vigorously oppose class certification.  At the motion to dismiss stage of the litigation, Bank of America moved to strike the class allegations in Plaintiffs' complaint, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type.  *See  Echevarria v. Bank of America Corp., Adv. Proc. No. 14-08216 (RDD)*,  Dkt. No. 63 at 10-14.  While the Bankruptcy Court denied Bank of America's motion to strike the class allegations, Bank of America would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification.   Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global*

15

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (stating that a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

> ### vi.      The Ability of the Defendant to Withstand a Greater Judgment.

This factor is neutral.  While Bank of America would likely be able to withstand a greater judgment, where, as here, the other *Grinnell* factors weigh in favor of settlement, this one factor does not weigh against settlement.  *See, e.g., In re Sinus Busters Products Consumer Litig.*, No. 12-CV-2429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement.") (citations omitted); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citation omitted).

> ### vii.      The Range of Reasonableness of the Settlement Fund.

*Grinnell* directs that the court view the range of reasonable of the settlement fund in light of (i) the best possible recovery and (ii) all the attendant risks of litigation.  *See, e.g., Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) ("[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]") (citation omitted).  These factors also weigh heavily in favor of settlement.

Here, Plaintiffs allege that Bank of America violated the discharge injunction of the Bankruptcy Code by failing and refusing to update the credit reporting on the Class's Bank of America debt to remove the "charged off" or other derogatory notation and instead report that debt

16

as "Included in Bankruptcy."  As a result of this litigation and as a part of the Settlement, Bank of America has not only addressed the reporting on Class Members' credit reports, but is also bound to address tradelines for such debt in the future in a similar manner.  This relief provides an excellent outcome for both the Class and for future consumers.  Moreover, Class Members are entitled to make claims from a $5.5 million Settlement Fund.  In addition, Class Members whose Bank of America debts were discharged in bankruptcy and who subsequently made payments on those debts to Bank of America will receive an automatic repayment from the Settlement Fund. As described *supra* at page 2, payments to Class Members are estimated to be significant.

Taking all of the above into account, Class Counsel have achieved the best possible recovery in light of the cost and risks of further litigation.

\* \* \*

Thus, application of the *Grinnell* factors indicates that the Settlement is substantively fair. As such, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

### C.      The Notice Satisfies Due Process and Rule 23.

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The notice procedures must be reasonable and comport with due process.  *Wal-Mart*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.") (citations omitted); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

Rule 23(c)(2)(B) also provides that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  It further provides that the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Id*.

Here, Notice to the Class was reasonable and comported with the requirements of the Federal Rules of Civil Procedure and due process.  The Bankruptcy Court preliminarily approved the Settlement and the proposed Notice on October 11, 2017.  *Echevarria v. Bank of America Corp.,* Adv. Proc. No. 14-08216 (RDD), Dkt. No. 117.  As described above, Notice was provided to the Class promptly after the entry of the Preliminary Approval Order.  Here, Bank of America's records and publically available bankruptcy court records permitted identification of all Class Members, allowing Notice to be sent directly to them.   Agreement, § 7.2.   The Settlement Administrator mailed Notice directly to Class Members via first class mail within forty-five days after the Bankruptcy Court entered the Preliminary Approval Order.  *Id*. at §§ 1.40; 7.3; Marr Decl. at ¶ 4.  The Settlement Agreement, Notice and Claim Forms are also available on the Settlement Website.  *Id*. at §§ 7.3, 7.7; Marr Decl. at ¶ 20.  Thus, Notice was provided to all Class Members in a timely fashion, giving them sufficient time to decide whether to participate in the Settlement, object or opt out.  *Id*. at §§ 1.41; 1.42; *see also generally* §§ 11, 12.  Thus, Notice in this action more than meets the reasonableness standard.

In addition, the Notice is sufficiently detailed, as required by Rule 23(c)(3).  The Notice describes the nature of the Action, defines the Settlement Class, explains the Released Claims, as

well as the monetary and other terms of the Settlement, and fully details the Settlement Class Members' rights.  *See* Agreement, Exh. 1.  It also indicates the time and place of the Final Approval Hearing, and the process for opting out of or objecting to the Settlement.  *Id*.  It also details the provisions for payment of Attorneys' Fees and Expenses and provides contact information for Class Counsel.  *Id*.  The Bankruptcy Court praised the Notice as "quite commendable in its being in plain English and explaining to people what they really want to know . . . ."  *Echevarria v. Bank of America Corp.,* Adv. Proc. No. 14-08216 (RDD), Dkt. No. 120 at 6-7.  In addition, the Bankruptcy Court suggested minor modifications to the Notice for further clarity, which the parties implemented, and the Bankruptcy Court preliminarily approved the Notice as revised.  *Id*. at Dkt. No. 117.

For these reasons, the Notice provided to the Class is not only reasonable but also the best Notice that is practicable under the circumstances.

### D.      The Court Should Certify the Class for Settlement.

Plaintiffs asked the Bankruptcy Court to preliminarily certify the Class for settlement purposes, and it did so on October 11, 2017.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. Nos. 113 and 117.   For the reasons identified in Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval (Dkt. No. 113  at 17-20), Plaintiffs request that the Court certify the Class.  Plaintiffs also request that the Court confirm the prior appointments of the Plaintiffs Michael Echevarria and Bebi Haniff as Class Representatives, and the law firms of Boies Schiller & Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *Id*. at 12-13, 18-19.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement as set forth in Proposed Final Judgment and Order of Dismissal with Prejudice submitted by the parties.  *See* Settlement Agreement at Exh. 4.

Respectfully submitted,

Dated:   Albany, New York
          February 15, 2018

**BOIES SCHILLER FLEXNER LLP**

By:      */s/ Adam R. Shaw*
         George F. Carpinello
         Adam R. Shaw
         Anne M. Nardacci
         Jenna C. Smith
         30 South Pearl Street
         Albany, NY  12207
         (518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 15, 2018, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Adam R. Shaw*
Adam R. Shaw
