## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

Michael Echevarria and Bebi Haniff

              Debtors.

Michael Echevarria and Bebi Haniff,

           Debtors and Plaintiffs
           on Behalf of Themselves
           And All Others
           Similarly Situated,

      v.

Bank of America Corporation; Bank of America, National Association; and FIA Card Services, N.A.,

           Defendants.

Index No.: 17-cv-8026

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNCONTESTED MOTION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD PAYMENTS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................3

   I.    The Terms of the Proposed Settlement.........................................................................6

ARGUMENT .................................................................................................................................8

   I.    The Requested Attorneys' Fees Are Reasonable and Appropriate................................8

       A.  Bank of America Will Pay $1 Million in Fees and Expenses Directly
          to Class Counsel.................................................................................................10

       B.  The Proposed Award to Class Counsel is Reasonable and Appropriate
          Under Both the Percentage and Lodestar Methods.............................................12

       C.  The Proposed Award to Class Counsel is Reasonable Under the
          *Goldberger* Criteria..........................................................................................16

          1.  The Time and Labor Expended By Class Counsel .........................................17

          2.  The Risks of the Litigation.............................................................................18

          3.  The Magnitude and Complexity of the Litigation. .........................................20

          4.  The Requested Fee in Relation to the Settlement. ..........................................20

          5.  The Quality of the Representation. .................................................................20

          6.  Public Policy Considerations. .........................................................................21

   II.   Class Counsel's Expenses Are Reasonable and Appropriate. ....................................22

   III.  The Proposed Incentive Awards to the Class Representatives are Reasonable and
        Appropriate. ...............................................................................................................23

CONCLUSION..............................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany,*
522 F.3d 182 (2d Cir. 2008) ............................................................................... 14, 15

*Banyai v. Mazur,*
No. 00 CIV 9806 SHS, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ...................................... 18

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ............................................................................................... 9

*Cavalieri v. General Elec. Co.,*
No. 06-315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ...................................... 11

*Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) .................................................................................... 13

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) .................................................................................... 18

*City of Providence v. Aeropostale, Inc.,*
No. 11 Civ. 7132(CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................... 13

*Dornberger v. Metropolitan Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................. 24

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010). .................................................................. 20

*Echevarria v. Bank of America Corp.,*
Adv., Proc. No. 14-08216 (RDD) ................................................................... passim

*Edmonds v. United States,*
658 F. Supp. 1126 (D.S.C. 1987) ............................................................................ 21

*Elliot v. Leatherstocking Corp.,*
No. 10-0934, 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) .................................... 24

*Fleisher v. Phoenix Life Ins. Co.,*
Nos. 11-cv-8405, 14-cv-8714, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................. 12, 15

iii

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000).................................................................................. passim

*In Re Haynes,*
  No. 14-cv-4171 (VB), 2015 WL 862061 (S.D.N.Y. Mar. 3, 2015)........................................... 4

*Hubbard v. Donahoe,*
  No. 03-1062, 2013 WL 3943495 (D.D.C. July 31, 2013) ....................................................... 13

*In Re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
  No. 03-md-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2009) .............................................15

*In re Arakis Energy Corp. Sec. Litig.,*
  No. 95 CV 3431,  2001 WL  1590512 (E.D.N.Y. Oct. 31,2001) ........................................... 22

*In re Bisys Sec. Litig.,*
  No. 04-cv-3840,  2007 WL 2049726 (S.D.N.Y.  July 16, 2007)........................................... 9, 15

*In Re Comverse Tech., Inc. Sec. Litig.,*
  2010 WL 2653354 (E.D.N.Y. 2010) ...................................................................................15, 16

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
  No. 98 CV 4318 HB, 2001 WL 709262 (S.D.NY. June 22, 2001) ........................................ 18

*In re Excess Value Ins. Coverage Litig.,*
  598 F.Supp.2d 380 (S.D.N.Y. 2005)...................................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................................... 22

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................................. 13

*In re Hi–Crush Partners L.P. Sec. Litig.,*
  No. 12 Civ. 8557(CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................................... 16

*In re Lloyd's Am. Trust Fund Litig.,*
  No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y.  Nov. 26, 2002) ............................................ 9

*In re Marsh ERISA Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010)............................................................................................ 21

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................................. 19

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*,
No. 02-md-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................................. 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 14, 15

*In re Polaroid ERISA Litig.*,
No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007)............................................ 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ................................................................. 14, 19

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ................................................................. 14

*In re Vitamins Antitrust Litig.*,
No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001).....23

*In re Visa Check*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003)................................................................. 23

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................. 9, 10, 21

*Johnson v. City of New York*,
No. 08-cv-3673, 2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010)............................................ 10

*Johnston v. Comerica Mortgage Corp.*,
83 F.3d 241 (8th Cir. 1996) ................................................................. 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973)................................................................. 14

*Maley v. Del. Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................22

*Malchman v. Davis*,
761 F.2d 893 (2d Cir. 1985)................................................................. 11-12

*Marsh & McLennan*,
2009 WL 5178546 ................................................................. 17, 19, 21

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................ 11

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) .............................................................. 10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .......................................................................... 14

*Morris v. Affinity Health Plan, Inc.*,
  859 F.Supp.2d 611 (S.D.N.Y.2012) .................................................. 15

*Olsen v. County of Nassau*,
  No. 05-cv-3623, 2010 WL 376642 (E.D.N.Y. Jan. 26, 2010) ............ 15

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999) ................................................................ 9

*Simmons v. NY.  City Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) .............................................................. 15

*Steinberg v. Nationwide Mut. Ins. Co.*,
  612 F. Supp. 2d 219 (E.D.N.Y. 2009) ............................................... 11

*Velez v. Novartis Pharm. Corp.*,
  No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 13

*Viafara v. MCIZ Corp.*,
  No. 12 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................... 23

*Wal-Mart Stores, Inc. v. Visa USA., Inc.*,
  396 F.3d 96 (2d Cir 2005) ............................................................ 9, 14

*Willix v. Healthfirst, Inc.*,
  No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y Feb. 18, 2011) ............. 18

*Zeltser v. Merrill Lynch & Co., Inc.*,
  No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .......... 18

Statutes

Section 524 of the Bankruptcy Code ...................................................... 1, 3

Rules

Fed. R. Civ. P. 23 ........................................................................................................ 3, 11

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 5, 17

Other Authorities

Manual for Complex Litigation, Fourth, § 21.7 .......................................................... 12

## PRELIMINARY STATEMENT

Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP (collectively, "Class Counsel") seek an award of $1,500,000 in attorneys' fees and expenses reasonably incurred in connection with an agreement reached with Bank of America Corp., Bank of America, N.A., and FIA Card Services, N.A. (collectively, "Bank of America" or "Defendants") to settle the above-captioned action (the "Settlement").  The Bankruptcy Court preliminarily approved the Settlement by order dated October 11, 2017.  Class Counsel's efforts in connection with the Settlement conferred substantial benefits on the Settlement Class[1] warranting an award of the reasonable fees and expenses sought herein.  Class Counsel requests an award of fees that represents approximately 23% percent of the monetary value of the settlement and approximately 90% of Class Counsel's lodestar.

In this class action, Plaintiffs have alleged that Bank of America violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to correct the credit reporting on certain consumer debts to reflect that those debts were discharged in bankruptcy.  Following substantial motion practice and discovery, Class Counsel negotiated the Settlement Agreement with Defendants' counsel.[2]  If approved, the Settlement would resolve the claims against Defendants in this action.

Pursuant to the Settlement Agreement, Defendants have agreed to fund a $5.5 million Settlement Fund and pay Class Counsel up to $1 million in Fees and Expenses.  The Settlement Agreement further provides that Class Counsel may seek approval for up to an additional $500,000

---

[1] By separate motion filed contemporaneously herewith, Plaintiffs seek final approval of the Settlement preliminarily approved by the Bankruptcy Court on October 11, 2017.

[2] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

1

in Fees and Expenses, to be paid from the Settlement Fund.  Those Class Members who submitted payments to Bank of America post-discharge will receive automatic payments from the Settlement Administrator to reimburse them for those payments, based on Bank of America's records of such payments.  Class Members who do not receive an automatic payment but submit proof of payment will also be reimbursed.  The remaining settlement monies will be distributed to the Class on a claims-made basis.

It is estimated that automatic reimbursement payments will go to the borrowers of 620 accounts for post-discharge payments made to Bank of America, with an average payment of approximately $695 per account.  Based on the number of these automatic reimbursement claims and the distribution claims submitted to date, it is estimated that the distribution claim payments will range from approximately $150-$300 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Notably, no settlement monies will revert to Bank of America and costs of Notice are paid by Bank of America, not from the Settlement Fund.

As a part of the Agreement, Bank of America also represents and warrants that it has requested that the Credit Reporting Agencies delete Class Members' Bank of America tradelines and further represents and warrants that it will not ask the Credit Reporting Agencies to reinstate the Class Members' Bank of America tradelines, unless a Class Member requests that they do so. In addition, Bank of America represents and warrants that if it sells similar debt within four (4) years from the Settlement, it will request that the Credit Reporting Agencies delete the Bank of America tradelines for such accounts, as well.

As such, the Settlement is an outstanding result for the Class—it offers substantial relief to the Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

Class Counsel, who took this case on a contingency fee basis with no guarantee of success and have received no payments for the considerable time and money they have expended in the more than three years that this litigation has been pending, respectfully request an award of the fees and expenses detailed in this application.   *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiffs allege that Bank of America attempts to collect discharged consumer debts by refusing, as a policy, to correct credit reporting to reflect that the debts were discharged in bankruptcy.   Plaintiffs allege that maintaining the negative credit reporting despite bankruptcy discharges pressures consumers to repay discharged debt in order to have the negative credit reporting removed from their credit reports.   Am. Compl. ¶¶ 81-90. Plaintiffs allege that Bank of America's systematic refusal to correct this credit reporting violates the discharge injunction set forth in § 524 of the Bankruptcy Code.   The Settlement Agreement provides substantial relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On April 30, 2013, Plaintiff Michael Echevarria filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.   *In re Echevarria*, No. 13-22693.   The Bankruptcy Court entered a discharge order on August 9, 2013.   On or about February 7, 2014, Mr. Echevarria moved to reopen his bankruptcy for the purpose of challenging Bank of America's conduct, and the Bankruptcy Court granted his motion on March 18, 2014.

Likewise, on November 20, 2013, Plaintiff Bebi Haniff filed for bankruptcy in the same bankruptcy court. *In re Haniff*, No. 13-23898. The Bankruptcy Court entered a discharge order on May 7, 2014. On October 20, 2014, Ms. Haniff moved to reopen her bankruptcy, and the Bankruptcy Court granted that motion on November 12, 2014.

On March 31, 2014, Plaintiff Michael Echevarria, individually and on behalf of all others similarly situated, filed a complaint against Bank of America (the "Complaint"). *Echevarria v. Bank of America Corp.,* Adv. Proc. No. 14-08216 (RDD), Dkt. No. 1. The parties subsequently engaged in extensive motion practice.

On May 30, 2014, Bank of America filed a motion to withdraw the reference of the action to the bankruptcy court. After full briefing and oral argument, on March 2, 2015, this Court denied that motion. *In re Haynes*, No. 14-cv-4171 (VB), 2015 WL 862061 (S.D.N.Y. Mar. 3, 2015).

On June 2, 2014, Bank of America moved to dismiss the Complaint. *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt Nos. 12-13. Following full briefing and oral argument, the Bankruptcy Court granted the motion, but also granted Plaintiff leave to move to replead. *See id*. at Dkt. Nos. 36-37. On November 18, 2014, with the Bankruptcy Court's permission, Plaintiffs filed an amended complaint (the "Amended Complaint"). *Id*. at Dkt. No. 59. Among other things, the Amended Complaint included Plaintiff Bebi Haniff as a second proposed representative of the putative class. Bank of America moved to dismiss the Amended Complaint and strike the class allegations in the Amended Complaint and subsequently moved to dismiss for lack of subject matter jurisdiction. *Id*. at Dkt. Nos. 62-63, and 71. The Bankruptcy Court denied both of these motions and, on April 29, 2015, Bank of America answered the Amended Complaint. *Id*. at Dkt. Nos. 86-87.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories and requests for admission.  *See* Declaration of Adam R. Shaw in Support of Motion for an Award of Attorneys' Fees and Expenses ("Shaw Decl.")  at ¶ 4.  In response to requests for production served by Class Counsel, Bank of America produced over 100,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation.  *Id*.  Class Counsel also deposed a corporate representative of Bank of America pursuant to Fed. R. Civ. P. 30(b)(6).  *Id*.  In addition, Class Counsel have issued third party subpoenas in the course of the litigation.  *Id*.

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation.  The parties had numerous settlement discussions and twice mediated the dispute with an experienced and well-respected mediator from JAMS, Peter Woodin.  *Id*. at ¶¶ 6-7.  In addition, they participated in two separate settlement conferences with Judge Drain in the Bankruptcy Court.  *Id*. at ¶ 8.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the Settlement.  The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature.  Plaintiffs had two objectives in filing this action – to remedy the alleged violation of the discharge injunction by having Bank of America correct its credit reporting to reflect that Class Members' debts were discharged in bankruptcy and to compensate Class Members who were harmed by Bank of America's actions.

The Settlement Agreement achieves both objectives and further safeguards the credit reports of future consumers.  Bank of America has addressed the credit reporting of Class

Members' debt and, under the terms of the Settlement, is obligated to address tradelines for future consumers.  Moreover, the Settlement provides reimbursement to Class Members who made post-discharge payments on their Bank of America debts, and further allows Class Members to make claims from a $5.5 million Settlement Fund.  Notice costs and the majority of the Fees and Expenses are not paid from the Settlement Fund and there is no reversion to Bank of America.

On August 25, 2017, Plaintiffs moved the Bankruptcy Court for preliminary approval of the Settlement.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 113.  Following a hearing, on October 11, 2017, the Bankruptcy Court issued an order preliminarily approving of the settlement and directing that notice be issued.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 117.  In its preliminary approval order, the Bankruptcy Court also conditionally certified the Class, for settlement purposes only, and appointed Michael Echevarria and Bebi Haniff as Class Representatives and the law firms Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *See id.*

On October 16, 2017, the parties jointly moved to withdraw the reference so that this Court could consider final approval of the settlement.  *Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 118.  On October 26, 2017, this Court granted the motion.  Dkt. No. 4.

## I.    The Terms of the Proposed Settlement.

Under the Settlement Agreement, the Class is defined as "the collective group of those individual borrowers who (i) maintained a Credit Card Account with BANA that was charged off by BANA and sold to a third party Debt Buyer on or after January 1, 2008, and (ii) were discharged in Chapter 7 bankruptcy after such debt was sold to a third party Debt Buyer but before October 1, 2015."  Agreement, § 1.13.

6

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that Bank of America will fund a qualified settlement fund of $5.5 million.  From this Settlement Fund, the Settlement Administrator shall automatically remit payment to Class Members whose Bank of America debts were discharged in bankruptcy and who subsequently made payments to Bank of America on those debts, in order to reimburse them for those payments (called "Post-Discharge Payors").  Agreement, § 5.1.  These Post-Discharge Payors need not to submit a Claim Form in order to receive payment.  *Id*.  However, persons who did not receive reimbursement but believe that they are entitled to reimbursement were also able to submit a claim.  The remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants who have submitted a Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.  The Settlement Agreement also provides that the Class Representatives may apply to receive, subject to court approval, Incentive Awards of $5,000 each from the Settlement Fund.  *Id*. at § 5.7.

In addition, as a direct result of the Action, Bank of America has addressed the credit reporting of Class Members by requesting that the Credit Reporting Agencies delete Class Members' Bank of America tradelines.  *Id*. at § 3.2.1.  Bank of America further represents and warrants as a part of the Settlement that it will not ask the Credit Reporting Agencies to reinstate Class Members' tradelines.  *Id*. at §§ 3.2.2-3.2.3.  Bank of America also represents and warrants as a part of the Settlement that "since the filing of the Action, [Bank of America] has not sold Defaulted Credit Card Accounts to third-party Debt Buyers."  *Id*. at § 3.2.5.  It further represents and warrants that if it *does* sell such debt within  four (4) years, it will request that the Credit Reporting Agencies delete the Bank of America tradelines for such accounts.  *Id*. at § 3.2.6 ("If [Bank of America] sells Defaulted Credit Card Accounts to a third-party Debt Buyer after the

Effective Date and on or before September 1, 2021, [Bank of America] will:  (1) request that the Credit Reporting Agencies delete the tradelines for the Defaulted Credit Card Accounts sold to a third-party Debt Buyer or (2) at the time of sale or thereafter, with respect to debts for which [Bank of America] receives a bankruptcy discharge notice from the Court, request that the Credit Reporting Agencies delete the tradeline for such sold accounts.").[3]  Thus, the Settlement addresses the core complaint of Plaintiffs and the Class and provides relief to them and to future consumers.

Under the Agreement, Bank of America shall separately pay Attorneys' Fees and Expenses and the settlement administration costs directly to Class Counsel and the Settlement Administrator respectively; these payments shall not be made from the Settlement Fund (except as described in the following).  *See id*. at § 15.  More specifically, Class Counsel may seek approval for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed $1 million and Bank of America shall pay these Fee and Expenses directly to Class Counsel.  *Id*.  In addition, Class Counsel may seek approval for up to an additional $500,000 in Fees and Expenses, to be paid from the Settlement Fund.  *Id*.

Pursuant to the terms of the Agreement, Class Counsel now seeks an award of $1,500,000 in Fees and Expenses ($1,482,859.56 in Fees and $17,140.44 in Expenses), as well as Incentive Awards of $5,000 for each of the Class Representatives.

## **ARGUMENT**

### **I.   The Requested Attorneys' Fees Are Reasonable and Appropriate.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client

---

[3] This provision in the Settlement Agreement also addresses Bank of America's obligations under the Agreement if federal or state law should change to require it to report on such debt.  *Id*.

is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Accordingly, counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.

Courts traditionally have used two methods to evaluate the reasonableness of fee requests in common fund cases: (1) the percentage method, which awards attorneys' fees as a percentage of the benefit created for the class; and (2) the lodestar approach, which involves multiplying the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience and then enhancing the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.  *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  The Second Circuit has held that district courts may use either the percentage method or the lodestar method, although the trend has been toward the percentage method.  *Wal-Mart Stores, Inc. v. Visa USA., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007).[4]  Even when not used as the primary means to determine an appropriate fee, "[t]he lodestar method remains highly useful . . . as a 'cross-check' to further ensure reasonableness." *Bisys*, 2007 WL 2049726, at *2; *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).[5]

---

[4] Additionally, "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002).

[5] "Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'"  *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)) (quoting *Goldberger*, 209 F.3d at 50).

Regardless of whether a court applies the percentage method or the lodestar method, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances. *Goldberger*, 209 F.3d at 47. The determination of "reasonableness" is within the Court's discretion. *Id.*; *WorldCom*, 388 F. Supp. 2d at 355. The Second Circuit has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ... ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (citation omitted).

Moreover, the Second Circuit has recognized that "market rates, where available, are the ideal proxy for [Plaintiffs' Counsel's] compensation." *Id.* at 52. Thus, the court should "approximate the reasonable fee that a competitive market would bear." *Johnson v. City of New York*, No. 08-cv-3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (citing *McDaniel v. Cty of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010)); *see also McDaniel*, 595 F.3d at 422 (stating that the district court's focus should be "on mimicking a market"). For the reasons set forth below, Class Counsel submit that the requested award of fees and expenses is reasonable under both the percentage and lodestar methods, and when viewed in light of the *Goldberger* factors.

### A. Bank of America Will Pay $1 Million in Fees and Expenses Directly to Class Counsel.

Before applying either the percentage or lodestar method, it is important to recognize that Bank of America has agreed to pay $1 million of Class Counsel's fees and expenses from its own resources. As a result, this portion of the fee award will have no impact whatsoever on the funds available to Class Members. When the settling defendant agrees to pay class counsel's fees from

10

its corporate treasury, independent of the benefit obtained for the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).

Here, Bank of America has agreed to pay Class Counsel's fees and expenses up to $1 million. As a result, this portion of the fee award will not diminish the benefits provided to the Class Members. "Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (approving fee request and noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No. 06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

Moreover, a fee negotiated between the parties is preferable, given that Defendants have an interest in minimizing the fee, Class Counsel has an interest in maximizing it, and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated. Moreover, the Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . ."); *Malchman v.*

*Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("[W]here ... the amount of the fees is important to

the party paying them, as well as to the attorney recipient, it seems to the author of this opinion

that an agreement 'not to oppose' an application for fees up to a point is essential to completion of

the settlement, because the defendants want to know their total maximum exposure and the

plaintiffs do not want to be sandbagged.").

As such, Class Counsel respectfully submits that the fact that payment of this portion of

the fees and expenses will in no way reduce the funds available for the Class and, further, was

negotiated at arm's length, supports approval of the requested award.

**B. The Proposed Award to Class Counsel is Reasonable and Appropriate Under Both the Percentage and Lodestar Methods.**

In this action, pursuant to the Settlement Agreement and as described above, Defendants

have agreed to pay Class Counsel $1 million in Fees and Expenses directly and Class Counsel seek

approval for an additional $500,000 in Fees and Expenses, to be paid from the $5.5 million

Settlement Fund.   Where there is both a common fund for the class's recovery (from which

attorneys' fees and expenses may also be compensated) and a separate fund for payment of class

counsel, courts treat these two funds collectively as a "constructive fund" for purposes of

determining the percentage of the fund the fee request represents.  *See, e.g.*, *Johnston v. Comerica

Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys,

those fees are still best viewed as an aspect of the class' recovery."); *Fleisher v. Phoenix Life Ins.

Co.*, Nos. 11-cv-8405, 14-cv-8714, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (treating

fees paid directly to attorneys as part of total value of settlement) (citing *Johnston*, 83 F.3d at 245–

46, and *In re Excess Value Ins. Coverage Litig.*, 598 F.Supp.2d 380, 386–87 (S.D.N.Y. 2005)

(holding value of settlement includes the value of any legal fees paid by defendants)); Manual for

Complex Litigation, Fourth, § 21.7 ("If an agreement is reached on the amount of a settlement

fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…").

Thus, here, the constructive fund totals $6.5 million.  Class Counsel's request for an award of fees and expenses of $1,500,000 in Fees and Expenses ($1,482,859.56 in Fees and $17,140.44 in Expenses, respectively), represents 23% of the value of the Settlement.  This percentage is reasonable and well within the range typically approved by courts both inside and outside of this district.  *See, e.g., Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) (affirming 30% award of a $42.5 million settlement); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM), 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement recovery); *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *8 (S.D.N.Y. Nov. 30, 2010) (approving $38 million in fees that were approximately 22 percent of the total settlement value and 25 percent of monetary award); *Hubbard v. Donahoe*, No. 03-1062, 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (awarding $910,000 of the $4,550,000 benefit to the class and holding that "the Court considers the separate funds for class recovery and attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value and holding that "[h]aving two funds -- one for the claimants, one for the attorneys -- is a well-recognized variant of a common-fund arrangement.").

Moreover, in addition to obtaining monetary relief for Class Members, Class Counsel have also obtained a Settlement in which Bank of America has represented and warranted that it has requested that the Credit Reporting Agencies delete Class Members' Bank of America tradelines

and further represented and warranted that it will not ask the Credit Reporting Agencies to reinstate Class Members' Bank of America tradelines, unless a Class Member requests that they do so.  In addition, Bank of America represents and warrants that if it sells similar debt within four (4) years, it will request that the Credit Reporting Agencies delete the Bank of America tradelines for such accounts, as well.  As such, the Settlement offers substantial non-monetary relief to the class, as well, which increases the total value of the Settlement against which Class Counsel's request for fees should be evaluated.  Although a precise dollar value cannot be placed on the non-monetary aspect of the Settlement, it is surely of significant value and thus further reduces the percentage of the Settlement represented by Class Counsel's fees.

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  The lodestar, or the presumptively reasonable fee, is comprised of the number of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997).  Courts then adjust that lodestar figure (typically by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the attorneys' work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-69 (3d Cir. 1973).

Class Counsel collectively expended more than 2,000 hours of professional time in connection with this class action on a fully contingent fee basis.  *See* Shaw Decl. at ¶ 15.   Class Counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates for its attorneys and professional staff amounts to $1,661,959.50.[6]  *See id.* at ¶ 16.  However,

---

[6] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re Union Carbide*

Class Counsel seeks only approximately 90% of that total lodestar or $1,500,000.  Given that courts frequently award fees equal to a *multiple* of Plaintiffs' Counsel's lodestar in complex class actions, the fee Class Counsel requests here is clearly reasonable.  *See, e.g., Wal-Mart Stores,* 396 F.3d at 123 (multiplier of 3.5 times lodestar of $62,940,045.84 held reasonable); *Bisys*, 2007 WL 2049726, at *3 ("The reasonableness of the 30% [fee] is also confirmed by the resultant lodestar multiplier of 2.99 . . . .  Such a multiplier falls well within the parameters set in this district and elsewhere.") (citations omitted); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit") (citing *Morris v. Affinity Health Plan, Inc.,* 859 F.Supp.2d 611, 623–24 (S.D.N.Y.2012)); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *5 (E.D.N.Y. 2010) (awarding 2.78 times lodestar, noting that "[w]here … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03-md-1529, 2006 WL 3378705, at *2-3 (S.D.N.Y. Nov. 16, 2009), *aff'd*, 272 F. Appx. 9 (2d Cir. 2008) (multiplier of 2.89 times lodestar of $33,686,468); *WorldCom*, 88 F. Supp. 2d at 354 (awarding multiplier of 4 times lodestar of $83,183,238.70);; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar of $36,191,751, noting that multipliers between 3 and 4.5 are common).

Additionally the hourly rates used in calculating Class Counsel's lodestar are reasonable. Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits.

*Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

*Simmons v. NY. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 190-91; *Olsen v. Cty. of Nassau*, No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010).  Class Counsel's hourly rates range from $350 to $990 for attorneys.  *See* Shaw Decl. at ¶ 17.  These rates are in line with those charged by firms practicing in New York City on both sides of the caption in complex class actions, and within the hourly rates that have been applied under the lodestar method in other recent cases.  *See, e.g., Nat'l Law Journal* samplings of law firm billing rates in 2014 (listing a number of law firms in New York City and other major metropolitan areas with billing rates comparable to Class Counsel's)[7]; *Fleisher*, WL 10847814 at *18 & n.15 (approving of class counsel's rates and citing the NLJ 2012 rate survey, stating "The National Law Journal survey for 2012 shows that partners at New York firms charge between $330 to $1200 and associates range between $215 to $760."); *In re Hi–Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) ("The rates billed by Lead Counsel (ranging from $425 to $825 per hour) for attorneys, are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude.");*Comverse Tech.*, 2010 WL 2653354, at *4 (finding that hourly rates from $125 to $880 were "not extraordinary for top New York law firms"); *In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, No. 02-md-1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (finding hourly rates of $650-$850 for partners and $515 for senior associate were "not inordinate for top-caliber New York law firms").

### C. The Proposed Award to Class Counsel is Reasonable Under the *Goldberger* Criteria.

---

[7]   Available at https://www.law.com/nationallawjournal/almID/1202636785489/Billing-Rates-Across-the-Country/ (last visited on Feb. 15, 2018).

As noted above, the Second Circuit has stated that whether the Court uses the percentage method or the lodestar approach, it should continue to consider the following traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations. *Goldberger,* 209 F.3d at 50. "In applying these criteria, a Court essentially makes . . . a qualitative assessment of a fair legal fee under all the circumstances of the case." *In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) (citation and internal quotation omitted).   An analysis of these factors further demonstrates that Class Counsel's fee request is reasonable.

### 1.   The Time and Labor Expended By Class Counsel.

The many hours expended by Class Counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex litigation. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses.  Shaw Decl. at ¶ 4.  Moreover, they have briefed a number of contested issues to the Bankruptcy Court, including Defendants' motion to withdraw the reference and multiple motions to dismiss.  Class counsel have also conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on Bank of America.  *Id*.   In response to Plaintiffs' document requests, Bank of America produced over 100,000 pages of documents, which Class Counsel have analyzed.  *Id*. Class Counsel have also deposed a corporate representative of Bank of America pursuant to Fed. R. Civ. P. 30(b)(6), and sought third party discovery.  *Id*.

In addition, the terms of the Settlement Agreement were negotiated through extensive meetings and discussions over the course of months.  *See* Shaw Decl. at ¶¶ 5-8.  These negotiations included face-to-face sessions as well as numerous telephone and email discussions.  Moreover, the parties' face-to-face negotiations took place during mediation sessions with an experienced and highly regarded JAMS mediator.  *Id*. at ¶¶ 6-7.  The parties also participated in multiple settlement conferences with Judge Drain in the Bankruptcy Court.  *Id*. at ¶ 8.

The significant time and effort devoted to this case by Class Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.

### 2.   The Risks of the Litigation.

An evaluation of the risks undertaken by Class Counsel in prosecuting this action also supports the reasonableness of their fee request.  The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).  "Contingency risk is the principal, though not exclusive factor courts should consider in their determination of attorneys fees."  *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 HB, 2001 WL 709262, at *6 (S.D.NY. June 22, 2001).  "It is well-established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated.  *Goldberger*, 209 F.3d at 55.

With respect to the merits of the action, Bank of America continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiffs' action, as it has done every step of the way to date.  As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides.  *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL

754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014).

Moreover, Bank of America would no doubt vigorously oppose class certification.  At the motion to dismiss stage of the litigation, Bank of America moved to strike the class allegations in Plaintiffs' complaint, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type.  *See Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 63 at 10-14.   While the Bankruptcy Court denied Bank of America's motion to strike the class allegations, Bank of America would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification.   Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (stating that a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

It is also important that Class Counsel undertook this case on a wholly contingent fee basis, knowing the litigation could last for years and would require the expenditure of thousands of attorney hours, as well as thousands of dollars in expenses, with no guarantee of compensation. "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours  and

advanced significant out-of-pocket expenses and received no remuneration whatsoever." *Marsh & McLennan,* 2009 WL 5178546, at *18 (citing examples of cases dismissed). While Class Counsel committed significant resources to the vigorous prosecution of this litigation, Class Counsel has not yet received any compensation. " Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award." *Prudential,* 985 F. Supp. at 417.

Despite all of the risks assumed by Class Counsel, no premium is being sought to compensate them for those risks. Instead, Plaintiffs' counsel seek fees that are equal only 90% their total lodestar. This request is inherently reasonable when considered in light of the risks undertaken.

### 3. The Magnitude and Complexity of the Litigation.

The requested fee award is also reasonable in light of the magnitude and complexity of the litigation. The procedural history above demonstrates that this litigation is, by its nature, complex. Moreover, it has already gone on for more than three years, at significant expense to the parties. If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming. This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial. In addition, post-judgment appeals are also possible. This litigation has been and would continue to be complex, costly and time-consuming and it would require significant judicial oversight.

### 4. The Requested Fee in Relation to the Settlement.

In *Dupler v. Costco Wholesale Corp.,* the court held that "the fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness."  705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010).  As discussed above, the proposed award represents approximately 23% of the monetary value of the Settlement and 90% of Class Counsel's lodestar.  This amount is well within the range of fees awarded by courts in this Circuit in similarly-sized class actions *(see supra* pp. 12-16).

### 5.  The Quality of the Representation.

The quality of the representation and the standing of Class Counsel also support the reasonableness of the requested fee.  "[P]rosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  The Bankruptcy Court previously appointed Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP Class Counsel based on their qualifications and experience and work on behalf the proposed Settlement Class.  *See Echevarria v. Bank of America Corp.*, Adv. Proc. No. 14-08216 (RDD), Dkt. No. 117 at 4.  Class Counsel has extensive experience in both complex class action litigation and bankruptcy law and have efficiently prosecuted this action on behalf of the proposed Class.  *See* Shaw Decl. at ¶¶ 8-14.

The high quality of the opposition that Class Counsel faced is a further testament to the quality of counsel's representation.  Bank of America is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee.  *See, e.g., Marsh & McLennan,* 2009 WL 5178546, at *19

21

(reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

### 6. Public Policy Considerations.

Public policy concerns strongly support rewarding counsel for bringing successful consumer protection litigation. *See, e.g., WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."). Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

* * *

Thus, as described above, Class Counsel's requested fees are reasonable under each of the percentage of common fund, lodestar, and *Goldberger* analyses.[8]

---

[8] Although Class Counsel believes this Court may resolve this Motion on its own, if the Court desires, it may also refer the Motion to the Bankruptcy Court for a report and recommendation on the Motion prior to resolving it. The Bankruptcy Court presided over this litigation for more than

II.   **Class Counsel's Expenses Are Reasonable and Appropriate.**

Plaintiffs' Counsel also request reimbursement of all litigation costs and expenses incurred during this litigation, which currently total $17,140.44. These relatively modest expenses were reasonable and necessary in this litigation, and have been expended for the direct benefit of the Class. *See* Shaw Decl. at ¶ 18. "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001); *see, e.g., In re Visa Check*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (noting that it is common practice to grant expense request and awarding millions in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, on-line legal research, and travel expenses."); *In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *69 (D.D.C. July 16, 2001) ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

III.   **The Proposed Incentive Awards to the Class Representatives are Reasonable and Appropriate.**

Providing incentive awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement. *See Viafara v. MCIZ Corp.*,

---

three years and thus is familiar with the full procedural history of the litigation and the parties' settlement efforts, as well as Class Counsel's diligence in representing the Class.

No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is important to compensate plaintiffs for the time they spend and the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel requests that the Court approve the payment of incentive awards to Plaintiffs in the amount of $5,000 each in recognition of their efforts on behalf of the Class.  The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases.  *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions).  Moreover, as with Class Counsel's fee request, the incentive award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class and has not been objected to.  Plaintiffs reviewed, and discussed with Class Counsel, various pleadings, discovery responses and memoranda of law.  Plaintiffs also conferred with Class Counsel regarding the status of the cases and the settlement negotiations, and represented well the interests of the absent class members.  Shaw Decl. at ¶ 19.  Plaintiffs' participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorney's fees and costs and incentive awards in the amounts indicated.

Respectfully submitted,

Dated:  Albany, New York
        February 15, 2018

**BOIES SCHILLER FLEXNER LLP**

By:      */s/ Adam R. Shaw*
         George F. Carpinello
         Adam R. Shaw
         Anne M. Nardacci
         Jenna C. Smith
         30 South Pearl Street
         Albany, NY  12207
         (518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2018, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Adam R. Shaw*
Adam R. Shaw